# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| AMERICAN BUILDERS INSURANCE COMPANY, | ) CASE NO.: 2:25-cv-05289-RMG<br>)<br>) |
| Plaintiff, | )<br>) **DECLARATORY JUDGMENT** |
| vs. | ) **COMPLAINT**<br>) |
| MADIGAN PROJECTS, LLC, RIVERA CONSTRUCTION, INC., RLS CONSTRUCTION, LLC, APS SERVICES, LLC, RYAN BLAINE, AND DONNA GATES | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

Plaintiff, American Builders Insurance Company ("Builders"), by and through its undersigned counsel, hereby states the following as its complaint for Declaratory Judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

1. Pursuant to 28 U.S.C. § 2201 and Rule 57, FRCP, Builders seeks a declaratory judgment and adjudication concerning the rights, obligations, and liabilities of the parties under certain policies of insurance with respect to claims of damages which have arisen as a result of a construction projects located at the following addresses:

    a. 10 Catfiddle Street, Charleston, South Carolina, which is the subject of a matter pending in the Court of Common Pleas, County of Charleston, State of South Carolina, Ninth Judicial Circuit titled *Donna Gates v. Jay Madigan, individually and d/b/a/ Madigan Projects, LLC.,* C/A No. 2022-CP-10-03892, involving construction defect allegations; and

b. 8 Catfiddle Street, Charleston, South Carolina, which is the subject of a matter pending in the Court of Common Pleas, County of Charleston, State of South Carolina, Ninth Judicial Circuit titled *Ryan Blaine v. Jay Madigan, individually and d/b/a Madigan Projects, LLC*, C/A No. 2022-CP-10-03891 involving construction defect allegations (collectively referred to herein as the "Underlying Lawsuits"). Copies of the complaints filed in the Underlying Lawsuits are attached as <u>Exhibits A and B</u>.

## JURISDICTION

2. Jurisdiction over the claims, subject matter and parties contained herein is invoked pursuant to 28 U.S.C. § 1332(a)(1) and (c) in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000.

3. This Court has personal jurisdiction over the Defendants pursuant to S.C. Code Ann. § 36-2-803 because, among other things, Defendants were conducting business in the State of South Carolina, contracting to supply services in the State of South Carolina, and the facts and circumstances giving rise to the claim that is the subject of this action occurred in South Carolina.

## VENUE

4. This action properly lies in the United States District Court for the District of South Carolina, Charleston Division, pursuant to 28 U.S.C. § 1391(a)(1) and (2) because the work performed on the project lies in this judicial district; the underlying action is pending in this judicial district; the parties are subject to personal jurisdiction in the state of South Carolina; and a substantial part of the events giving rise to this declaratory judgement action occurred in this judicial district. Thus, venue is proper in this judicial district.

**PARTIES**

5. This matter is a declaratory judgement action, pursuant to 28 U.S.C. §2201 *et. seq.* and Rule 57, FRCP, seeking a declaration by as to the rights and obligations of the parties herein pursuant to policy of insurance sold by Builders to Madigan Projects, LLC ("Madigan Projects").

6. Builders is an insurance company organized and existing under the laws of the state of Delaware, is licensed to sell policies of insurance in the state of South Carolina, and it maintains its principal place of business in Georgia.

7. Madigan Projects is a corporation organized and existing under the laws of the State of South Carolina with its principal place of business in Charleston, South Carolina.

8. Nothing contained herein is to be construed as being in support of the allegations against Madigan Projects in the Underlying Lawsuits.

9. Rivera Construction, Inc. is a corporation organized and existing under the laws of the State of South Carolina. Builders seeks no separate relief from this Defendant, but only seeks to bind it to the outcome of this coverage dispute.

10. RLS Construction, LLC is a limited liability company organized and existing under the laws of the State of South Carolina. Builders seeks no separate relief from this Defendant, but only seeks to bind it to the outcome of this coverage dispute.

11. APS Services, LLC is a limited liability company organized and existing under the laws of the State of South Carolina. Builders seeks no separate relief from this Defendant, but only seeks to bind it to the outcome of this coverage dispute.

12. Defendant Donna Gates is a citizen and resident of Charleston County, South Carolina. Builders seeks on separate relief or judgment from this Defendant, but only seeks to bind her to the outcome of this coverage dispute.

13. Defendant Ryan Blaine is a citizen and resident of Charleston County, South Carolina. Builders seeks no separate relief or judgment from this Defendant, but only seeks to bind him to the outcome of this coverage dispute.

## FACTUAL ALLEGATIONS

**Gates Lawsuit**

14. On August 23, 2022, Donna Gates filed a lawsuit against Jay Madigan, individually and d/b/a Madigan Projects, LLC, in the Charleston County Court of Common Pleas entitled Donna Gates v. Jay Madigan, individually and d/b/a Madigan Projects, LLC, C/A No. 2022-CP-10-03892. *See* Exhibit A.

15. According to the Complaint, Donna Gates entered into a contract with Madigan Projects on March 18, 2017 to construct her single-family residence located at 10 Catfiddle Street in Charleston, South Carolina (the "Gates residence"). *Id.* at 1-2.

16. Prior to filing the lawsuit, Donna Gates entered into a waiver and release agreement dated January 14, 2019. *See* Gates Release, attached hereto as Exhibit C.

17. Pursuant to the Waiver Agreement, Madigan Projects provided labor, materials, equipment and other services to the Project and the Project remained under construction with approximately 85% of the work completed as of the date of the Waiver Agreement. *Id.*

18. Pursuant to the Agreement, Donna Gates agreed to assume sole responsibility for the remaining work on the Project and waived and released any claims he may have then or in the future against Madigan Project for any work performed on the Project by Madigan Projects or on behalf of Madigan Projects. *Id.*

19. According to the Complaint, the Gates residence contained many latent building defects at the time the Certificate of Occupancy was issued. *Id.* at 2.

20. According to the Complaint, the building defects at the residence have since resulted in repeated and severe moisture intrusion damage and other damages to said property. *Id.*

21. According to the Complaint, a preliminary inspection of the Gates residence evidenced improperly designed and incorrect use of building products for the design and environment surrounding the property, improperly installed stucco cladding, improperly installed windows and doors, improperly weather-lapping of building products, improper installation of flashing, and various other building defects. *Id.*

22. In the Complaint, Ms. Gates brought claims of Negligence/Gross Negligence, Breach of Warranties, Unfair Trade Practices, and Breach of Contract against Madigan Projects. *See generally*, Exhibit A.

23. With regard to the Negligence/Gross Negligence claim, Ms. Gates alleges Madigan Projects was negligent, grossly negligent, careless, willful and wanton in one or more of the following particulars: (a) in failing to construct the Gates residence with adequate flashing; (b) in failing to construct the Gates residence with adequate water barriers; (c) in failing to select, provide and install proper and adequate water barriers; (d) in failing to install expansion or control joints in the stucco cladding; (e) in failing to properly select products and materials for use on the said property; (f) in failing to properly apply materials and related products; (g) in failing to properly select, install or construct various building components; (h) in failing to construct the Gates residence in accordance with due care and in accordance with standard building practices; (i) in failing to construct the said property in accordance with the building code; (j) in failing to properly supervise the work and construction of the said property; (k) in failing to hire competent subcontractors and specialty contractors; (l) in failing to construct the residence with an adequate exterior building envelope; (m) in failing to properly coordinate the subcontractors; (n) in failing

to act as a reasonable person would in the circumstances then and there prevailing; (o) in failing to provide a defect free product; and (p) in placing a defective product into the stream of commerce. *Id.* at 3-4.

24. On May 30, 2023, the parties agreed to a stay of the lawsuit pending the completion of arbitration. *See* Consent Order, attached hereto as Exhibit D.

25. On March 17, 2025, Jay Madigan, individually, and Madigan Projects, LLC filed a lawsuit against its subcontractors involved in the construction of the Gates residence in the Charleston County Court of Common Pleas entitled *Jay Madigan, individually, and d/b/a Madigan Projects, LLC v. Rivera Construction, Inc., RLS Construction, LLC, and APS Services, LLC*, C/A No. 2025-CP-10-01452. *See* Complaint, attached hereto as Exhibit E.

**Blaine Lawsuit**

26. On August 23, 2022, Ryan Blaine filed a lawsuit against Jay Madigan, individually and d/b/a Madigan Projects, LLC, in the Charleston County Court of Common Pleas entitled *Donna Gates v. Jay Madigan, individually and d/b/a Madigan Projects, LLC*, C/A No. 2022-CP-10-03891. *See* Exhibit B.

27. According to the Complaint, Ryan Blaine entered into a contract with Madigan Projects on March 24, 2017 to construct her single-family residence located at 8 Catfiddle Street in Charleston, South Carolina (the "Gates residence"). *Id.* at 1-2.

28. Prior to filing the lawsuit, Ryan Blaine entered into a waiver and release agreement dated January 14, 2019. *See* Blaine Release, attached hereto as Exhibit F.

29. Pursuant to the Waiver Agreement, Madigan Projects had provided labor, materials, equipment and other services to the Project and the Project remained under construction with approximately 85% of the work completed as of the date of the Waiver Agreement. *Id.*

30. Pursuant to the Agreement, Ryan Blain agreed to assume sole responsibility for the remaining work on the Project and waived and released any claims he may have then or in the future against Madigan Project for any work performed on the Project by Madigan Projects or on behalf of Madigan Projects. *Id.*

31. According to the Complaint, the Blaine residence contained many latent building defects at the time the Certificate of Occupancy was issued. *Id.* at 2.

32. According to the Complaint, the building defects at the residence have since resulted in repeated and severe moisture intrusion damage and other damages to said property. *Id.*

33. According to the Complaint, a preliminary inspection of the Blaine residence evidenced improperly designed and incorrect use of building products for the design and environment surrounding the property, improperly installed stucco cladding, improperly installed windows and doors, improperly weather-lapping of building products, improper installation of flashing, and various other building defects. *Id.*

34. In the Complaint, Mr. Blaine brought claims of Negligence/Gross Negligence, Breach of Warranties, Unfair Trade Practices, and Breach of Contract against Madigan Projects. *See generally*, Exhibit B.

35. With regard to the Negligence/Gross Negligence claim, Mr. Blaine alleges Madigan Projects was negligent, grossly negligent, careless, willful and wanton in one or more of the following particulars: (a) in failing to construct the Gates residence with adequate flashing; (b) in failing to construct the Gates residence with adequate water barriers; (c) in failing to select, provide and install proper and adequate water barriers; (d) in failing to install expansion or control joints in the stucco cladding; (e) in failing to properly select products and materials for use on the said property; (f) in failing to properly apply materials and related products; (g) in failing to

properly select, install or construct various building components; (h) in failing to construct the Gates residence in accordance with due care and in accordance with standard building practices; (i) in failing to construct the said property in accordance with the building code; (j) in failing to properly supervise the work and construction of the said property; (k) in failing to hire competent subcontractors and specialty contractors; (l) in failing to construct the residence with an adequate exterior building envelope; (m) in failing to properly coordinate the subcontractors; (n) in failing to act as a reasonable person would in the circumstances then and there prevailing; (o) in failing to provide a defect free product; and (p) in placing a defective product into the stream of commerce. *Id.* at 3-4.

36.     On May 30, 2023, the parties agreed to a stay of the lawsuit pending the completion of arbitration. *See* Consent Order, attached hereto as Exhibit D.

37.     On March 17, 2025, Jay Madigan, individually, and Madigan Projects, LLC filed a lawsuit against its subcontractors involved in the construction of the Blaine residence in the Charleston County Court of Common Pleas entitled *Jay Madigan, individually, and d/b/a Madigan Projects, LLC v. Rivera Construction, Inc., RLS Construction, LLC, and APS Services, LLC*, C/A No. 2025-CP-10-01452. *See* Exhibit E.

## POLICIES

38.     Builders issued the following commercial general liability policies to Madigan Projects: GLP 0181262 02, with effective dates of October 8, 2016 to October 8, 2017, GLP 0181262 03, with effective dates of October 8, 2017 to October 8, 2018, and GLP 0181262 04, with effective dates of October 8, 2018 to October 8, 2019. True and accurate copies of the policies are attached hereto as Exhibit G. The policies provide $1 million limits per occurrence and $2 million limits in the aggregate.

39. Builders is currently defending Madigan Projects in the Underlying Lawsuits subject to a complete reservation of rights. *See* Gates Reservation of Rights Letters, attached hereto as <u>Exhibit H</u>; *see also* Blaine Reservation of Rights Letters, attached hereto as <u>Exhibit I</u>.

**FOR A FIRST CAUSE OF ACTION**
**Declaratory Judgment**
**(Resultant Damage vs. Faulty Work)**

40. Builders incorporates by reference the allegations set forth in the preceding paragraphs as if fully restated herein.

41. Builders would show that in order to bring a claim within coverage, the Insuring Agreement of the policies require any qualifying "property damage" be caused by an "occurrence" within the policy period.

42. The damages alleged in the underlying lawsuits do not constitute "property damage" caused by an "occurrence" as defined by the Builders' policy.

43. Builders seeks a binding declaration from this Court that repair costs associated with a finding of defective or faulty work by Madigan Projects and/or its subcontractor does not meet the policy's definition of "property damage" caused by an "occurrence" and are excluded under the Resulting Damage Coverage endorsement (Form GL RFWE 10 13).

44. Builders seeks a binding declaration from this Court that the loss of use damages associated with a finding of defective or faulty work by Madigan Projects and/or its subcontractor are excluded under the Resulting Damage Coverage Endorsement (Form GL RFWE 10 13).

45. Builders seeks a binding declaration from the Court that it does not owe a duty to defend or indemnify because the damages in the underlying lawsuits do not constitute "property damage" caused by an "occurrence" as defined by the Policy and South Carolina law.

46. If the Court determines Builders has a duty to defend and/or indemnify, which is denied, Builders seeks a declaration allocating any damages found against Madigan Projects and/or its subcontractors relating to its scope of work at the project be allocated into categories of (1) improper work, and (2) resulting damages.

47. If the Court determines Builders has a duty to defend and/or indemnify, which is denied, Builders seeks a declaration of the dollar amount of damages that meet the definition of "property damage" caused by an "occurrence."

48. If the Court determines Builders has a duty to defend and/or indemnify, which is denied, Builders seeks a binding declaration from this Court that any damages meeting the definition of "property damage" and not otherwise excluded and/or limited by any applicable policy exclusions or limiting endorsements under the Builders' policy must be applied to a time-on-risk analysis to determine which of those damages fall within the policy period.

**FOR A SECOND CAUSE OF ACTION**
**Declaratory Judgment**
**(Mold/Fungi Exclusions)**

49. Builders incorporates by reference the allegations set forth in the preceding paragraphs as if fully restated herein.

50. Builders would show that the Policies provide only limited fungi/mold coverage, with $2,500 diminishing limits and a $2,000 deductible, for any qualifying "property damage" found against Madigan Projects and/or its subcontractors that would not have occurred, but for the threatened existence of mold and fungi.

51. In the event there is any qualifying "property damage," Builders will show that any such "property damage" is barred by the Fungi and Bacteria Exclusion (CG 21 67 12 04) and the Limited Fungi or Bacteria Coverage (GL FB 01 09) because there is no coverage for "property

damage" found against Madigan Projects and its subcontractors which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within the building or structure, including its contents, regardless of whether any cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

52. In the event there is any qualifying "property damage," Builders will show that any such "property damage" is barred by the Fungi and Bacteria Exclusion (CG 21 67 12 04) and the Limited Fungi or Bacteria Coverage (GL FB 01 09) because there is no coverage for "property damage" found against Madigan Projects and its subcontractors for any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effect of, "fungi" or bacteria, by any insured or by any other person or entity.

53. In the event there is any qualifying "property damage," Builders will show that the Limited Fungi or Bacteria Coverage (GL FB 01 09) provides only limited fungi/mold coverage that is subject to $2,500 diminishing limits, which includes defense expenses and other costs.

54. In the event there is any qualifying "property damage," Builders will show that the $2,500 diminishing limits set forth in Limited Fungi or Bacteria Coverage (GL FB 01 09) have already been exhausted, thereby relieving Builders of any obligation to indemnify Madigan Projects for mold-related damages.

**FOR A THIRD CAUSE OF ACTION**
**Declaratory Judgment**
**(Designated Work Exclusion)**

55. Builders incorporates by reference the allegations set forth in the preceding paragraphs as if fully restated herein.

56. The Gates and the Blaine residences exceed three stories.

57. The policies do not provide coverage for any qualifying "property damage" arising out of the design, manufacture, construction, fabrication, maintenance, repair, remodeling, service, correction or replacement of any structure, which exceeds 3 stories.

58. Builders seeks a binding declaration that there is no coverage under the 2016-2017 Policy because the Designated Work Exclusion in the Policy (Form GLEDW 6/10) bars coverage arising out of the design, manufacture, construction, fabrication, maintenance, repair, remodeling, service, correction or replacement of any structure, which exceeds 3 stories.

**FOR A FOURTH CAUSE OF ACTION**
**Declaratory Judgment**
**(Professional Services Exclusions)**

59. Builders incorporates by reference the allegations set forth in the preceding paragraphs as if fully restated herein.

60. According to the Complaints, Madigan Projects failed to complete the project in accordance with the applicable building code, state law, good design and in conformance with the manufacturer's instructions and industry standards.

61. The Policies do not provide coverage for any qualifying "property damage" arising out of the rendering of or the failure to render any professional services as a result of Madigan Projects providing engineering, architectural, or surveying services in Madigan Project's capacity as an engineer, architect, or surveyor or by providing such services through hiring independent professionals to provide engineering, architectural, or surveying services in connection with Madigan Project's work.

62. Likewise, the Policies do not provide coverage for any qualifying "property damage" arising from professional services including, but not limited to, approving or failing to

12

approve drawing and specifications, as well as any inspection or quality control activities done by, or for, Madigan Project on a project.

63. Builders would show that any qualifying "property damage" found against Madigan Projects that relates to any professional services by Madigan Projects is excluded under the Engineers, Architects or Surveyors Professional Liability Exclusion (Form CG 22 43 04 13), Contractors Professional Liability Exclusion (Form CG 22 79 04 13), and the Construction Management Errors and omissions Exclusion (Form 22 34 04 13).

### FOR A SIXTH CAUSE OF ACTION
### Declaratory Judgment
### (Known Loss Exclusion)

64. Builders incorporates by reference the allegations set forth in the preceding paragraphs as if fully restated herein.

65. Upon information and belief, in or around 2018, Madigan Projects met with Donna Gates and Ryan Blaine to discuss issues with the construction of the residences.

66. In or around 2019, Donna Gates and Ryan Blaine entered into a Waiver and Release Agreement prior to the filing of the Underlying Lawsuits, which, among other things, released Madigan Projects from any and all arising out of or relating to its work or work performed on its behalf at the projects.

67. Builders would show that the Policies do not provide coverage for any qualifying "property damage" that was known to Madigan Projects prior to the inception of the Builders' Policies.

## FOR A SEVENTH CAUSE OF ACTION
### Declaratory Judgment
**(Duties)**

68.  Builders incorporates by reference the allegations set forth in the preceding paragraphs as if fully restated herein.

69.  The Policies include a provision that requires Madigan Project to provide Builders with notice of a potential claim as soon as practicable.

70.  Upon information and belief, in or around 2018, Madigan Projects met with Donna Gates and Ryan Blaine to discuss issues with the construction of the residences.

71.  Builders did not learn of the claims until the Underlying Lawsuits were filed in October of 2022, which was several years after Madigan Projects learned of the claims and alleged construction defects at the residences.

72.  Builders will show it has suffered substantial prejudice because it was deprived of the ability to engage in the management of the investigation of the cause and extent of the alleged defects in 2018 and 2019.

73.  Builders will further show it has suffered substantial prejudice because of Madigan Project's several year delay in reporting the claims because it was unable to inspect the residences, hire expert(s) to investigate the issues that existed in 2018 and 2019, and it was unable to work with Madigan Projects to settle the claim at that time. Despite failing to satisfy the notice provision in the Policies, Madigan Projects now seeks indemnity in the Underlying Lawsuits.

## FOR AN EIGTH CAUSE OF ACTION
### Declaratory Judgment
**(Additional Exclusions)**

74.  Builders incorporates by reference the allegations set forth in the preceding paragraphs as if fully restated herein.

75. Builders would show any such property damage is excluded by the Expected or Intended Exclusion to the extent that it was expected or intended from the standpoint of the insured.

76. Builders would show that any qualifying "property damage" is excluded by the Contractual Liability Exclusion to the extent that Madigan Projects is obligated to pay such damages by reason of the assumption of liability in a contract or agreement.

77. Builders would show that any qualifying "property damage" is excluded by Exclusions j(5) and j(6) because there is no coverage for damage to that particular part of real property on which Madigan Projects and/or its subcontractors were performing operations, if the "property damage" arose out of those operations.

78. Builders would show that any qualifying "property damage" is excluded by Exclusions j(5) and j(6) because there is no coverage for any "property damage" that must be restored, repaired, or replaced because of Madigan Projects and/or its subcontractors incorrect or faulty work.

79. Builders would show that any qualifying "property damage" is excluded by Exclusions K – N because there is no coverage to repair Madigan Projects and/or its subcontractor's work or product or for damage to materials, parts or equipment furnished in connection with products handled or sold by Madigan Projects and/or its subcontractor.

80. Builders would show that any other damages and costs claimed in the Underlying Lawsuits including, but not limited to, punitive damages and attorneys' fees, that do not meet the definition of "property damage" and are not caused by an "occurrence," are not covered under the Policy.

81. Builders would show that the Policy excludes payment of attorneys' fees and expenses taxed against Madigan Projects under the Supplementary Payments section of the Policy.

82. Builders seeks a binding declaration from this Court that any damages meeting the definition of "property damage" and not otherwise excluded and/or limited by any applicable policy exclusions or limiting endorsements under the Builders' policy must be applied to a time-on-risk analysis to determine which of those damages fall within the policy period.

83. Builders would show that any property damage found against Madigan Projects that is found to fall under any applicable policy exclusion(s) or limiting endorsement(s) in the Policy are excluded and/or limited. Builders reserves its right to identify additional exclusion(s) and endorsement(s) not explicitly mentioned herein that may exclude or limit coverage.

84. Builders, therefore, seeks a declaration from the Court that the Policy does not require Builders to defend and indemnify Madigan Projects with respect to the claims against it in the Underlying Action.

WHEREFORE, having fully set forth its claims, Builders prays for relief as follows:

1. For a declaration of the rights and obligations of the parties herein;

2. For a declaration that Builders does not owe a duty to indemnify Madigan Projects and/or its subcontractors in the Underlying Lawsuits;

3. In the alternative, for a declaration that determines which damages, if any, trigger the duty of indemnity under the Builders' policy;

4. For the court to determine the dollar amount of damages, if any, due under the relevant Builders' policy after conducting an analysis of the damages to determine which damages, if any, from the underlying lawsuits meet the requirements of the insuring agreement, are not excluded or limited by exclusions or endorsements, and that are property damage caused by an occurrence during the policy subject to a time-on-risk analysis; and

5. For any and all other relief this Court deems just and proper.

            ETHRIDGE LAW GROUP, LLC

            By: *s/ Mary S. Willis*
              MARY S. WILLIS
              Federal Bar No.: 12388
              R. MICHAEL ETHRIDGE
              Federal Bar No.: 7497
              1100 Queensborough Blvd., Suite 200
              Mount Pleasant, SC 29464
              843-614-0007
              mwillis@ethridgelawgroup.com
              methridge@ethridgelawgroup.com

            *Attorneys for Plaintiff American Builders Insurance Company*